UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMALL BALENTINE                                                                  PLAINTIFF
ADC #141693

V.                                    No. 3:21-CV-265-JTR

AUDREY HUDDLESTON, Nurse,
Jackson County Detention Center                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER[1]

### I. Introduction

On December 20, 2021, Jamall Balentine ("Balentine"), a convicted prisoner in the Jackson County Detention Center ("JCDC"), filed a *pro so* § 1983 Complaint alleging that Defendant Nurse Audrey Huddleston ("Nurse Huddleston") violated his constitutional rights.[2] *Doc. 1*. Specifically, he alleges that Nurse Huddleston was deliberately indifferent to his serious medical needs when she stopped providing his prescribed cough medicine and delayed him access to see a doctor for blood in his stool. He brings claims against Nurse Huddleston in her personal and official capacities. *Id.* at 6–7. For relief, Balentine seeks monetary and injunctive relief. *Id. at 15*.

---

[1] By written consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *Doc. 15-1*.

[2] Balentine also brought claims against Nicci Carter and Nini Wilson, which have since been dismissed. *See Doc. 7; Doc. 10*.

On January 3, 2023, Nurse Huddleston filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Facts arguing that she is entitled to qualified immunity because Balentine failed to demonstrate that she acted with deliberate indifference to his serious medical needs. *Docs. 24–26*. Featherston filed a Response, Statement of Disputed Fact, and Affidavit, to which Nurse Huddleston has filed a Reply. *Docs. 28–31*. Thus, the issues are joined and ready for disposition.

## II. Facts

Before addressing the merits of Nurse Huddleston's Motion for Summary Judgment, the Court will set forth the relevant facts, in the light most favorable to Balentine.[3]

1. On November 8, 2021, Balentine picked up a prescription for cough medicine (Promethazine-DM) written by "Dr. Hunt of Newport, AR." *Doc. 1 at 7; Doc. 23-3; Doc. 24-4; Doc. 30 at 1, ¶ 3*. The prescription bottle stated that the medicine was to be taken "every 6 hours as needed for cough," but did not provide a number of days that the prescription should be taken. *Doc. 23-3; Doc. 23-4*.

---

[3] "In deciding a motion for summary judgment, courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion…so long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotation marks, brackets, and ellipsis omitted).

The sources for these facts are: Balentine's Complaint, signed under penalty of perjury (*Doc. 1*); Nurse Huddleston's Affidavit (*Doc. 24-1*); Balentine's Affidavit (*Doc. 30*); pictures of the cough medication at issue (*Docs. 24-3; Doc. 24-4*); and relevant documents from Balentine's JCDC file, including his "Medical Intake Form," "Medication History," and medical records (*Doc. 24-2; Doc. 24-5; Doc. 24-6 at 3–32*).

2. The next day, November 9, 2021, Balentine was sentenced to a term of imprisonment in the Arkansas Division of Correction ("ADC"). Balentine had brought his cough medicine to court. So, when he was booked into the JCDC to await transfer to the ADC, he had his cough medicine with him. *Docs. 24-2, 24-6; Doc. 30 at 1, ¶¶ 2–3.*

3. Upon booking, Nurse Huddleston believed that Balentine had the "common cold" and that the medicine had been prescribed for that reason. *Doc. 24-1 at 1, ¶¶ 4, 12.*

4. Nurse Huddleston and Balentine discussed the prescription and agreed that he would receive the cough medication for "ten days." *Id. at 2, ¶ 6; Doc. 30 at 5.*

5. On November 12, Balentine began receiving the cough medicine at pill call. *Doc. 24-5 at 1*. He received the medicine every day for seven days—sometimes twice a day. *Doc. 24-5 at 1–5*. Then, at morning pill call on November 19, Nurse Huddleston told him that he was "done" and would "not be getting it anymore." *Doc. 1 at 14; Doc. 30 at 2, ¶¶ 5–9.* Balentine immediately filed a grievance complaining that he did not receive his cough medicine for the full ten days on which he and Nurse Huddleston had agreed. *Doc. 30 at 4.*

6.  On November 22, Balentine filed a medical request complaining that he had blood in his stool. *Doc. 24-6 at 4*. He requested "to see [the] doctor asap please." *Id.*

7.  Balentine filed additional medical requests on November 23, November 29, and December 3 regarding the blood in his stool. *Id. at 6–7*.

8.  On December 5, 2021, Balentine signed his Complaint in this matter. *Doc. 1 at 5*. He alleged that Nurse Huddleston declined to provide him his prescription cough medicine on November 19. *Doc. 1 at 14–15*. He further alleged that he had been asking Nurse Huddleston, "for a month," to see a doctor for the blood in stool, but still had not been seen. *Id. at 15*. In addition to monetary damages, he requested that he receive his medicine and "to see a doctor." *Id.*

9.  On December 6, Nurse Huddleston responded to Balentine's December 3 medical request by stating: "Please show [the blood in your stool] to the jailers so that they can take a picture of it for the doctor." *Doc. 24-6 at 8*.

10. Balentine filed additional medical requests for the blood in his stool on December 7 and 13. *Id. at 11, 13–15*.

11. On or about Tuesday, December 14, Balentine was seen by the JCDC medical provider, Dr. Darrell Elkins.[4] *Doc. 26 at 3, ¶ 14; Doc. 24-6 at 14–15*. Dr.

---

[4] Balentine claims that he was not seen by the doctor until February 17, 2022 (*Doc. 30 at 3*), but that statement is blatantly contradicted by the record. *See Scott,* 550 U.S. at 380.

Elkins prescribed Balentine a "round" of Preparation-H suppositories, a hemorrhoid treatment, and Colace, a stool softener. *Doc. 24-6 at 15; Doc. 24-5 at 20.*

12. On December 15, Balentine began receiving the Preparation-H and Colace at morning pill call. *Id.* He received the Preparation-H until January 3, 2022 and continued taking the Colace until he was transferred from JCDC on April 4, 2022. *Doc. 42-2*.

13. On December 20, 2021, Balentine's Complaint was received and docketed by the Court. *Doc. 1*.

14. On December 21, 2021, Balentine filed a JCDC medical request for a "colon cancer test." *Doc. 24-6 at 16*. Balentine also complained that he was "getting a cold" and requested "cold and sinus tablets." *Id. at 17*. Nurse Huddleston printed the request for a colon cancer test and faxed it to Dr. Elkins. *Id. at 16*. She also provided Balentine with three days' worth of "cold tablets." *Id. at 17*; *Doc. 24-5 at 22–25*.

15. Balentine continued to complain of blood in his stool and hemorrhoids through January 2022. *Doc. 24-6 at 18–21*.

16. On February 17, 2022, Balentine's received a complete blood count and several other blood tests. *Doc. 24-6 at 23–287*. According to Nurse Huddleston, the lab results did not indicate any serious medical condition. *Id.; Doc. 24-1 at 3, ¶ 22*.

### III.  Discussion

Nurse Huddleston argues that she is entitled to qualified immunity because Balentine has failed to show she violated a clearly established constitutional right. She further argues the official capacity claim against her should be dismissed. The Court agrees. For the reasons explained below, Defendant Huddleston's Motion for Summary Judgment (*Doc. 24*) is granted.[5]

### A.  Personal Capacity Claim Against Nurse Huddleston

To determine if Nurse Huddleston is entitled to qualified immunity, the Court must conduct a two-prong inquiry into whether Balentine has demonstrated: "(1) a deprivation of a constitutional right, [which was] (2) ... clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021). The Court may address those two issues in any order, but unless it finds in Balentine's favor on *both* prongs of the qualified immunity analysis, Nurse Huddleston is entitled to qualified immunity. *City Union Mission, Inc. v. Sharp*, 36 F.4th 810, 817 (8th Cir. 2022); *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citation and internal quotations marks omitted).

---

[5]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

To prevail on his claim of deliberate indifference against Nurse Huddleston in her personal capacity, Balentine must prove that: (1) he had an objectively serious need for medical care; and (2) Nurse Huddleston subjectively knew of, but deliberately disregarded, his serious medical needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or if it is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018).

Deliberate indifference, which goes well beyond negligence or gross negligence, "requires proof of a reckless disregard of the known risk." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). In other words, "there must be actual knowledge of the risk of harm, followed by deliberate inaction amounting to callousness." *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998).

Balentine alleges two deliberate indifference claims against Huddleston. For his first deliberate indifference claim, Balentine argues that Nurse Huddleston interfered with his cough medicine prescription from an outside medical provider, Dr. Hunt.

Viewing the facts in the light most favorable to Balentine, Dr. Hunt diagnosed him with a serious medical need—either a cough or cold—on or about November 8,

2021. He continued to suffer from that serious medical need until at least November 9, 2021, when Nurse Huddleston believed that Balentine had the "common cold." However, Balentine has come forward with no evidence *and has not even alleged* that he continued to cough or otherwise suffer from a serious medical need on November 19, 2021, when Nurse Huddleston discontinued his cough medication. Although deliberate indifference can include the intentional interference with a prescribed treatment, *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995), there is no indication that Nurse Huddleston had direct knowledge that Balentine had an *active* need for cough medication and *intentionally* denied him such treatment.

For his second deliberate indifference claim, Balentine claims that Nurse Huddleston delayed him access to see a doctor for his hemorrhoids. He first started complaining of blood in his stool on November 22. He saw a doctor on December 14 and started receiving medication on December 15.

In order to maintain claim for this 23-day delay in medical care, Balentine "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (citation omitted). He has not done so. Accordingly, Balentine's second deliberate indifference claim fails, as a matter of law.

Because Balentine has presented no evidence verifying that he had a serious medical need on November 19, 2021 or that the 23-day delay in treatment for his

8

hemorrhoids had a detrimental effect, he has failed to demonstrate that Nurse Huddleston violated his constitutional rights. Accordingly, Nurse Huddleston is entitled to qualified immunity, in her personal capacity.[6]

### B. Official Capacity Claim Against Nurse Huddleston

The claim against Nurse Huddleston in her official capacity is equivalent to a claim against the entity for which she works, Jackson County. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Without a constitutional violation by Nurse Huddleston, there can be no liability on the part of Jackson County. *Smith v. Kilgore*, 926 F.3d 479, 486 (8th Cir. 2019); *Schoettle v. Jefferson County*, 788 F.3d 855, 861–62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim.") Accordingly, summary judgment is also be granted for Nurse Huddleston, in her official capacity.

### IV. Conclusion

Balentine failed to demonstrate that Nurse Huddleston acted with deliberate indifference to his serious medical needs.

IT IS THEREFORE ORDERED THAT:

1. Nurse Huddleston's Motion for Summary Judgment (*Doc. 24*) is GRANTED.

---

[6] Because the Court finds in Nurse Huddleston's favor on the first prong of the qualified immunity analysis, it need not address the second "clearly established" prong.

2. All claims against Nurse Huddleston, in her personal and official capacities, are DISMISSED with prejudice.

3. Judgment will be entered accordingly.

SO ORDERED this 5th day of September, 2023.

_____
UNITED STATES MAGISTRATE JUDGE